UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND
BALTIMORE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No.:  1:16-cr-469 JFM |
| | ) | |
| MARTIN ROBERT HALL, | ) | |
| | ) | |
| Defendant. | ) | |

## MOTION TO REVOKE THE DETENTION ORDER OF THE MAGISTRATE COURT

COMES NOW Defendant, Martin Hall ("Hall"), by and through counsel, and hereby

moves this Court, pursuant to 18 U.S.C. § 3145(b), to (1) revoke the detention order of

the magistrate judge and (2) admit Hall to bail on a combination of conditions of release that

will reasonably assure his appearance at trial and the safety of the community or any other

person.  In the alternative, Hall moves for a hearing at which he may present evidence as to the

available conditions of release that will accomplish these same ends[1].

### I. Rules

A presumption against release attaches to allegations of transportation of child

pornography[2].  This presumption is rebuttable, however, and places on the accused a limited

burden to come forward with evidence that he does not pose a risk of flight or community

---

[1] Among others, these conditions should include the following: home incarceration, random pretrial services home visits, 24-hour in-home supervision, 24-hour location monitoring, GPS tracking of the sole family car, divestment of all assets, computer use and internet access prohibitions, and surrender of Hall's approximately $600,000 401K account as security to obtain his release.

[2] *See* 18 U.S.C. § 3142(e)(3)(E).

danger[3].  Once met, this burden does not disappear but remains as one factor among others a

court may consider in the bail analysis[4].  The presumption against release does not shift the

burden of persuasion, though[5].  This latter burden remains with the government and requires it to

establish by a preponderance of the evidence that no combination of conditions of release can

_reasonably assure_ the appearance of the accused as required or by clear and convincing

evidence[6] that no such combination of conditions can _reasonably assure_ the safety of the

community or any other person.  A district court reviews a magistrate's order of detention _de_

_novo_[7] and, consistent therewith, must independently determine the propriety of a decision to

---

[3] _See United States v. Mercedes_, 254 F.3d 433, 436 (2nd Cir. 2001); _see also United States v. English_, 629 F.3d 311, 319 (8th Cir. 2011).

[4] _See id._

[5] _See id._

[6] The clear and convincing standard represents a heightened burden of proof and, within the Fourth Circuit, has been defined as evidence that supports a "'high[] probab[ility],'" of accuracy.  _Direx v, Israel, Ltd. v. Breakthrough Medical Corp_, 952 F.2d 802, 809 n.7 (4th Cir. 1991) (citing 9 J. Wigmore Evidence § 2498) (3d ed. 1940).  Not surprisingly, courts apply this standard in important, often life altering contexts.  _See e.g., Cruzan by Cruzan v. Director, Missouri Department of Health_, et al., 497 U.S. 261, 283 (1990) (upholding clear and convincing standard for a party who seeks "to terminate an incompetent individual's life-sustaining treatment"); _Santosky v. Kramer_, 455 U.S. 753-766-767 (1982) (requiring clear and convincing evidence for termination of parental rights); _Addington v. Texas_, 441 U.S. 418, 426-427 (1979) (requiring clear and convincing evidence in an involuntary commitment hearing). This standard's use in the Bail Reform Act reflects the significance of bail determinations generally and the substantial burdens pretrial detention imposes.  _See e.g._, Samuel R. Weisman, _Pretrial Detention and the Right to be Monitored_, 123 Yale L.J. 1344, 1353-54 (2014) (noting pretrial detainees are "physically barred from the outside world, restricted to limited visits by family members and attorneys.  Their conversations are constantly monitored by guards and other inmates, their mail is searched, and they are subjected to frequent and invasive searches and pat-downs to ensure institutional safety."); _see also_ Albert W. Alschuler, _Preventative Pretrial Detention and the Failure of Interest Balancing Approaches to Due Process_, 85 Mich. L. Rev. 510, 517 (1986) ("As commentators have often noted, the burdens of pretrial detention are not limited to losses of time and money. The jobs of detained defendants frequently disappear and friendships and family relationships are disrupted.  Indeed, families and friends sometimes lose interest and no longer visit or write….  Moreover, incarceration affects a defendant's physical appearance and impedes his ability to consult with lawyers, locate witnesses, and otherwise prepare a defense).

[7] _See e.g., United States v. Williams_, 753 F.2d 329, 331 (4th Cir. 1985); _see also United States v. Stewart_, 2001 WL 1020779, **1 (4th Cir. 2001).

detain[8].  To this end, a district court may hold a hearing anew and receive evidence, as does a magistrate judge at the outset[9].

## II. Risk of Flight

The magistrate judge deemed Hall a risk of flight such that no combination of conditions of release could reasonably assure his appearance at trial.  In so doing, the magistrate relied on four factors:  Hall's (i) foreign travel; (ii) overseas ties, (iii) financial resources, and (iv) statutory maximum penalty[10].  Neither alone nor in the aggregate do these factors establish by a preponderance of the evidence that Hall poses a risk of flight against which no combination of conditions can reasonably assure.

Hall does not have a passport.  The government seized it at the time of his arrest, and, as a condition of release, this Court can prohibit him from applying for a replacement.  Moreover, if he applied for one, the State Department would deny the request outright[11].  Thus Hall cannot plausibly travel abroad.

In addition, home incarceration will ensure Hall remains in his home while his case is pending and do so through at least four separate mechanisms of enforcement:  random pretrial services home visits; 24-hour location monitoring; 24-hour supervision provided by his wife of 30 years and, if necessary, the Halls' parents[12]; and GPS tracking of the sole family car.

---

[8] *See id.*

[9] *See Stewart* at **2 (4th Cir. 2001); *see also United States v. Torres*, 929 F.2d 291, 292 (7th Cir. 1991).

[10] *See Order of Detention* [Doc. Text #26]; *see also Detention Hearing Transcript* 40-43 [hereinafter "*D. Tr.*"].

[11] *See 22 CFR 51.60(b)(2)*; *see also* Department of State, U.S. Passports & International Travel, *Passport Information for Criminal Law Enforcement Officers* (Revised Nov. 2013), available at https://travel.state.gov/content/passports/en/passports/information/legal-matters/passport-information-for-criminal-law-enforcement-officers.html.

[12] Neither Hall's wife, Belinda, nor her parents or his have any history of criminality, and neither the government nor the magistrate has questioned their integrity.

Hall's financial resources do not suggest he presents a meaningful risk of flight either.  Hall had to borrow money from his parents to fund his defense.  The home he shares with his wife, Belinda, and his 401K account constitute his only real assets.  At present, his wife is transferring title to the home into her name alone,[13] and she plans to list it for sale thereafter.  If and when it sells, she'll place the proceeds from the sale into an account she solely controls.  As to his 401K account, Hall will post it as collateral to secure his release.  His remaining assets should affect this Court's analysis little.  Hall and Belinda own a single car[14].  The car is titled in her name only, and this Court can subject it to GPS tracking, paid for by Hall, to ensure its whereabouts at all times.  In addition, Hall's wife is currently transferring all financial accounts on which Hall's name appears into her name alone and cancelling all lines of credit he holds.  Thus, whatever overseas ties Hall might have, he could not avail himself of the funds necessary to access them if he wanted.

Hall's statutory maximum range of punishment does not alter the score.  Indeed, federal courts commonly admit defendants to bail who confront similar and even greater maximum penalties.  For example, drug trafficking defendants whose ranges of punishment typically vary from 0 to 20 years to five to 40 years to 10 years to life[15] represented the second largest defendant-class admitted to bail between 2008 and 2010[16], the most recent years for which data

---

[13] Hall's wife expects to complete this task within the next ten days.

[14] Hall's wife sold the family's second car shortly after his detention.

[15] *See 18 U.S.C. §§ 841(b)(1)(C), (b)(1)(B), and (b)(1)(A).*

[16] *See* U.S Department of Justice, Office of Justice Programs, Bureau of Justice Statistics, *Special Report*, *Pretrial Release and Misconduct in Federal District Courts, 2008 – 2010* at 3 (Nov. 2012).  Property crime defendants represented the largest class of those admitted to bail and, for the most part (82.5 percent), faced maximum penalties either equal to Hall's (*e.g.*, mail and wire fraud maximums of 20 years) or in excess of it (e.g., a bank fraud maximum of 30 years).  *See id*.

appear available[17].  More notable still, of all federal defendants admitted to bail in that same time, only 1 percent failed to appear in court[18] and, quite likely, few if any labored under the stringent conditions Hall proposes.  Thus, as an empirical matter, Hall is exceedingly unlikely to flee, a fact reinforced by the conditions he proposes and the complete absence of criminality from his past[19].  Accordingly, a fair assessment of the facts and available conditions of release does not establish by a preponderance of the evidence that Hall poses a risk of flight against which no combination of release conditions can reasonably assure.

### III. Danger to the Community

The magistrate deemed Hall a danger to the safety of the community against which no combination of conditions of release could reasonably assure and, in so doing, relied on four factors:  Hall's (i) purported computer sophistication; (ii) alleged commission of an in-home offense; (iii) claimed total image-count; and (iv) suggested production of contraband abroad.  Again, neither alone nor in the aggregate do these factors establish by clear and convincing evidence that Hall poses a danger to the community against which no combination of conditions of release can reasonably assure.

Available conditions of release can keep Hall from the internet and reasonably assure the community's afety.  Among other things, this Court can prohibit Hall from connecting to the

---

[17] *See id.*

[18] *See id.* at 1.  Notably, according to the Department of Justice, this non-appearance rate has remained remarkably stable since about 1990.  *See* U.S. Department of Justice, Office of Justice Programs, Bureau of Justice Statistics, *Pretrial Release of Federal Felony Defendants* at 2 *(Feb. 1994); See also* U.S. Department of Justice, Office of Justice, Bureau of Justice Statistics, *Special Report, Pretrial Detention and Misconduct in Federal District Courts, 1995 -2010* at 8 *(Feb. 2013).*

[19] Notably, the state charged Hall prior to the instant prosecution and admitted him to bail after his arrest.  He returned home following his release, where he was arrested about six hours later.  In between, Hall made no effort to flee, though he still held his passport and had access to his bank accounts and other assets.

internet through any and all means and direct pretrial services to install software to monitor the activity of the only two computers in the home – his wife's laptop and desktop computers[20].

These same conditions should allay the magistrate's concern that Hall's release will place him in the same setting in which he committed the alleged offense in the first place, namely, his home.  Moreover, at the time of the claimed offense, Hall's wife had no reason to monitor his activity.  Circumstances, however, have since changed; she now has every reason to monitor his activity quite closely, particularly if designated Hall's third-party custodian, as she and Hall suggest.

The number of images the government attributes to Hall ought to weigh little, if any, in this Court's analysis[21].  Indeed, it seems entirely unclear how an image-count itself even links to a relative assessment of danger.  Nevertheless, to the extent this Court thinks otherwise, the count alleged here marks Hall as no more than an ordinary defendant and certainly not among the most serious.  According to the United States Sentencing Commission, § 2252A(a) defendants typically amass image counts in the thousands, a result of innovations that enable computer users to download and store vast amounts of data almost instantly [22].  In fact, not uncommonly, §

---

[20] Hall's wife has three password protected computers, two laptops and a desktop.  If Hall is admitted to bail, she will remove one of the laptops from the home, keep her desktop under lock and key, and maintain control of the remaining laptop at all times.  Hall's wife has does not object to random searches of her computers and cell phone or the installation of monitoring software on her internet capable devices.

[21] According to the government's proffer, Hall possessed "over 8,000 files of child erotica, prepubescent and related materials."  *D. Tr.* at 10.  But "child erotica," which neither the United States Code nor the United States Sentencing Guidelines define, does not qualify as child pornography.  *See 18 U.S.C. § 2256.*  Thus, the magistrate's reference to "many thousands of files," *see id.* at 41, appears to overstate matters to at least some degree, as does his explicit written reference to "8,000 images."  *See Order of Detention* [Doc. Text #26].  For what it's worth, the government recently estimated an image-count closer to 4,000 files, though it's still unclear how many of this number fall into the "child-erotica," rather than child pornography, category.

[22] *See* United States Sentencing Commission, *Report to the Congress: Federal Child Pornography Offenses*, p. 41-46 (2012); *see also id.* at 46 n. 30 (noting "[c]omputer storage capacity has increased to the point at which a small personal computer hard drive can hold as much information as the United States Library of Congress.").

2252A(a) defendants amass image counts in the hundreds of thousands and, on occasion, up to a million or more[23].  Thus, even if image-count served as a reasoned measure by which to assess danger, Hall's claimed count would not identify him as among the more serious or dangerous defendants.

More relevant is the government's suggestion that Hall may have produced images abroad. Yet neither does this allegation demonstrate he poses a danger to the community against which no combination of conditions of release can reasonably assure.  Among other things, the allegation centers entirely on uncorroborated conduct abroad.  Domestically, no child with whom Hall has ever had contact has ever claimed he acted improperly.  More relevant still, no one alleges Hall has ever acted inappropriately towards anyone in his home, child or otherwise, the most relevant location for purposes of this Court's analysis, given his home is where he'll remain if granted bail.

Congressional findings should ease concerns, too.  Hall's history includes no prior arrests, convictions, or drug addiction, characteristics explicitly identified by Congress as strong correlates of a heightened risk of danger[24].  A fair assessment of the facts and available conditions of release thus does not establish by clear and convincing evidence that Hall poses a danger to the community or any other person against which no combination of conditions of release can reasonably.

---

[23] *See id*. at 45 (observing "[m]any offenders possess child pornography collections numbering in the hundreds of thousands or even millions of images and videos"); *see also* 80 n. 46 (same).

[24] *See* S. Rep. No. 98-225. p. 11 (1983) U.S. Code Cong. & Admin. News 1984, p. 3192 [hereinafter "S. Rep 98-225"].

## IV. Conclusion

The Bail Reform Act did not alter the preference for release of an accused pending trial; release remains the norm under the Act and detention the "carefully limited exception.[25]" Nor did the Act signal "a congressional intent to incarcerate wholesale the category of accused persons awaiting trial.[26]" Rather, Congress sought through the Act to demonstrate its concern for a "small but identifiable group of particularly dangerous defendants as to whom neither the imposition of stringent release conditions nor the prospect of revocation of release can reasonably assure the safety of the community[27]." For these "demonstrably dangerous defendants" who pose a "strong probability" and "especially grave risk" of criminal activity, Congress deemed detention appropriate[28]. For the remainder, it did not. Hall does not fit within this discrete defendant-class. Available conditions of release will reasonably assure his appearance at trial and the safety of the community. For these reasons, this court should admit Hall to bail on the combination conditions of release proposed[29], or, in the alternative, set a hearing at which he may present evidence as to these propriety of these and additional conditions.

---

[25] *See United States v. Salerno*, 481 U.S. 739, 755 (1987).

[26] *See United States v. Orta*, 760 F.2d 887, 890 (8th Cir. 1985).

[27] S. Rep 98-225 p. 3189.

[28] *Id*. at 3188-90.

[29] As noted, these conditions include, but are not limited to, home incarceration, random pretrial services home visits, 24-hour in-home supervision, 24-hour location monitoring, GPS tracking of the sole family car, divestment of all assets, computer use and internet access prohibitions, and surrender of Hall's approximately $600,000 401K account as security to obtain his release.

Respectfully Submitted

Rosenblum Fry, P.C.,

By:    /s/ Adam D. Fein
          ADAM D. FEIN, #52255 MO
          Attorney for Defendant
          120 S. Central Avenue, Suite 130
          Clayton, Missouri 63105
          (314) 862-4332/Facsimile (314) 862-8050
          Email: afein@rfpclaw.com

## **CERTIFICATE OF SERVICE**

I hereby certify that on April 14, 2017, the foregoing was electronically filed with the Clerk of the Court to be served by operation of the Court's electronic filing system upon Mr. Paul Budlow, assistant United States attorney.