UNITED STATES DSTRICT COURT
DISTRICT OF MARYLAND
BALTIMORE DIVISION

|  |  |
|---|---|
| Plaintiff, | )<br>)<br>) |
| vs. | ) Case No.:  1:16-cr-469 JFM (JMC) |
| MARTIN ROBERT HALL, | )<br>)<br>) |
| Defendant. | ) |

## FIRST MOTION TO SUPPRESS STATEMENTS

COMES NOW Defendant, Martin R. Hall ("Hall"), by and through counsel, and hereby moves this Court to suppress all statements made during his September 7, 2016 interrogation, because law enforcement obtained his statements in violation of his right to remain silent under the Fifth and Fourteenth Amendments to the United States Constitution.  In support of this motion, Hall states as follows:

### I. Facts[1]

Between August 11 and August 17, 2016, a Baltimore County Police Department ("BCPD") computer-based investigation linked components of seven child pornographic files to IP address 96.244.150.210.  A subpoena sent to Verizon Communications connected the IP address to Hall's home, and, on September 1, 2016, BCPD Detective Josh Rees ("Rees") applied for and received a warrant to search the residence for evidence related to child pornography.

At approximately 5:00 a.m. on September 7, 2016, Rees and nine others executed the warrant.  Hall and his wife, Belinda, were asleep at the time and awoke to loud noise outside the

---

[1] The facts cited were pulled from the government's discovery.  Hall assumes, but does not concede, their truth for purposes of this motion.

1

home.  Hall went downstairs and opened the front door.  Rees and the others entered, some with firearms visible at their side.  Belinda walked downstairs as the commotion continued, where she met the shine of a flashlight and a command to put her hands in the air.  Rees directed her and Hall outside, while others conducted a sweep of the home.

Rees brought the two back inside thereafter and sat them on a living room couch.  He read them the search warrant and, pursuant to *Miranda*, read Hall his rights.  Hall invoked his right to remain silent, and, in response, Rees moved Belinda to the kitchen where the two spoke.  Among other things, she described the computers in the home, where she and Hall kept them, and who used which.  Rees returned her to the couch where she and Hall remained, save for Hall's several escorted trips to the bathroom.  BCPD officers continued their search and performed on-scene forensic analyses of the digital devices they found.

About an hour or so later, Rees moved Hall to a bedroom upstairs, where he re-*Mirandized* Hall and asked if he understood his rights.  Hall responded, "Yes, sir," and a one hour and eleven-minute interrogation ensued in which Hall made a series of incriminating statements.  Hall moves to suppress these statements[2] as the product of a Fifth Amendment violation.

## II. Rules

Prior to interrogation, law enforcement must advise an in-custody accused of the rights *Miranda* protects.  *See Miranda v. Arizona*, 384 U.S. 486, 4454 (1966).  Among others, *Miranda* protects the right to remain silent.  *See id.* at 479.  To safeguard this right, law enforcement may not interrogate an accused who elects to keep silent, *see Michigan v. Mosley*, 423 U.S. 96, 100

---

[2]  Rees recorded the entirety of the interrogation, which was subsequently downloaded to disc.  The disc contains all statements Hall moves to suppress, and Hall will provide a copy of it to this Court within seven days.

(1975), and must "scrupulously honor" this choice. *Id*. Courts consider five factors and the totality of circumstances surrounding them to determine whether law enforcement scrupulously honored an accused's right:

> (1) Whether law enforcement advised the accused of his *Miranda* rights prior to the interrogation and the accused acknowledged he understood them; (2) whether law enforcement immediately stopped the interrogation after the accused invoked his right; (3) whether law enforcement resumed interrogation only after a significant period of time; (4) whether law enforcement re-advised the accused of his *Miranda* rights prior to the later interrogation; and (5) whether law enforcement restricted the second interrogation to a crime that had not been a subject of the first.

*See id*. at 104-105 (1975).

### III. Argument

In *Mosley*, law enforcement took custody of the defendant ("Mosley") after a tip implicated him in two robberies. *See id*. at 97. Following his arrest, a robbery detective met Mosley at police headquarters. *See id*. The detective *Mirandized* him, and Mosley invoked his right to remain silent. *See id*. The detective questioned him no further. *See id*. Two-plus hours later, a homicide detective moved Mosley to the headquarters' fifth floor. *See id*. at 97-98. There, he re-*Mirandized* Mosley and interrogated him about a murder committed four months earlier. *See id*. at 98. Mosely confessed to involvement in the offense, s*ee id*., and the state subsequently charged him with murder-first. *See id*.

Prior to trial, Mosley moved to suppress his confession as the product of a Fifth Amendment violation. *See id*. at 98-99. In particular, he alleged law enforcement failed to honor his request to remain silent, since the second detective engaged him after he had invoked his right to remain silent with the first *See id*. The trial court disagreed, admitted the confession into evidence, and a jury convicted him of the murder. *See id*. at 99. On appeal, the state appellate court reversed. *See id*. The Supreme Court granted cert thereafter on the state's

petition and reversed on its analysis of the above factors. *See id*. In specific, the court relied on six facts. The first detective *Mirandized* Mosely and stopped the interrogation after Mosley elected to remain silent. *See id*. at 104. In addition, the second detective re-*Mirandized* Mosely before the second interrogation and interrogated Mosely about the murder only, not the robberies Mosely chose not to discuss. *See id*. Moreover, the second interrogation took place more than two hours after the first, a relatively significant period of time, according to the Court, and it was unclear if the second detective knew anything about Mosely's first interrogation.

Though similar, the facts here differ in important respects and should lead to a different outcome altogether. Rees *Mirandized* Hall prior to his first interrogation effort. Hall understood his rights and, in response, invoked his right to remain silent. Rees did not then interrogate Hall further. As in *Mosely*, these factors weigh in favor of the Government.

Between 90 and 120 minutes later, Rees moved Hall from the couch where he sat with his wife to a bedroom upstairs. Unsolicited, he re-engaged and re-*Mirandized* Hall[3]. In contrast to *Mosley*, this later interrogation took place less than two hours after the first[4] and was conducted by the same detective who interrogated Hall earlier. Rees thus knew Hall had elected to remain silent just less than two hours before[5]. Moreover, Rees' interrogation centered on the same subject as the first, Hall's alleged involvement in child exploitation. In addition, Hall had no time alone between the interrogations to reflect calmly or collect his thoughts. Presumably, Mosley had two-plus hours to reflect.

---

[3] This factor weighs in favor of the government.

[4] This brief interval of time would seem to preclude repeated efforts to wear down Hall and render the absence of such efforts less notable.

[5] *Compare Hatley v. Lockhart,* 990 F.3d 1070, 1074 (8th Cir. 1993) ("second interviewer's unawareness of defendant's refusal to talk in first interview supports inference that Fifth Amendment rights were not violated") (*citing United States v. McClinton,* 982 F.2d 278, 282 (8th Cir. 1993)).

Admittedly, Rees did not forcibly compel Hall to respond to his re-interrogation effort. Nor did he threaten or intimidate him. But compulsion can take many forms, some of which are quite subtle and effective[6], particularly as to those like Hall with no prior law enforcement contact[7]. Here, Rees separated Hall from his wife and likely did so to increase his probability of success – in other words, "to undermine [Hall's] resolve to remain silent,[8]" a conclusion supported by Rees' first failed effort to interrogate Hall which took place in the presence of Hall's wife.

These remaining factors weigh in Hall's favor, distinguish his case from *Mosely*, and demonstrate the BCMPD did not scrupulously honor his right to remain silent.

FOR THE FOREGOING REASONS, this Court should suppress all statements Hall made during his September 7, 2016 interrogation, because law enforcement obtained these statements in violation of the Fifth and Fourteenth Amendments to the United States Constitution.

        Respectfully submitted,

        ROSENBLUM, SCWARTZ, & FRY, P.C.,

By:    /S/ Adam D. Fein_____
        ADAM D. FEIN
        Attorney for Defendant
        120 S. Central Avenue, Suite 130
        Clayton, Missouri 63105
        (314) 862-4332/Facsimile (314) 862-8050

---

[6] *See Connecticut v. Barrett*, 479 U.S. 523 (528 (1987) (observing even subtle coercion can operate on individuals "to overcome free choice in producing a statement after the privilege has been once invoked.") (citation omitted); *see also Miranda*, 384 at 465 (1966) (noting "the compelling atmosphere of interrogation.").

[7] *See United States v. Parker*, 2006 WL 2633962 *4 (W.D. NC 2006) (considering "previous dealings with law enforcement on felony charges" in determining the voluntariness of defendant's post right to counsel statement).

[8] *See United States v. Schwensow*, 151 F.3d 650, 659 (7th Cir. 1998) ("We join these circuits in holding that the constitutionality of a subsequent police interview depends…on whether police, in conducting the interview, sought to undermine the suspect's resolve to remain silent.").

## **CERTIFICATE OF SERVICE**

  I hereby certify that on May 9, 2017, the foregoing was electronically filed with the Clerk of the Court to be served by operation of the Courts electronic filing system upon Mr. Paul Budlow, assistant United States attorney.