



**U.S. Department of Justice**

*United States Attorney*
*District of Maryland*

---

*Paul E. Budlow*
*Assistant United States Attorney*
*Paul.Budlow@usdoj.gov*

*Suite 400*
*36 S. Charles Street*
*Baltimore, MD 21201-3119*

*DIRECT: 410-209-4917*
*MAIN: 410-209-4800*
*FAX: 410-962-3091*

July 5, 2018

Marc Johnson, Esquire
Rosenblum Schwartz & Fry
120 South Central Avenue, Suite 130
Saint Louis, Missouri 63105

Re:    *United States v. Martin Robert Hall*, Criminal No.: ELH-16-0469

Dear Counsel:

This letter, together with the Sealed Supplement, confirms the plea agreement which has been offered to the Defendant by the United States Attorney's Office for the District of Maryland ("this Office"). If the Defendant accepts this offer, please have him execute it in the spaces provided below. If this offer has not been accepted by Wednesday, July 11, at 10:00 a.m., it will be deemed withdrawn. The terms of the agreement are as follows:

## Offense of Conviction

1.      The Defendant agrees to plead guilty to Count Three and Count Five of the Superseding Indictment now pending against him which charges him with Production of Child Pornography with Intent to Transport to the United States in violation of 18 U.S.C. § 2251(c)(1) and (c)(2)(A) and Sex Tourism, in violation of 18 U.S.C. § 2423(c), respectively. The Defendant admits that he is, in fact, guilty of these offenses and will so advise the Court.

## Elements of the Offense

2.      The elements of the offenses to which the Defendant has agreed to plead guilty, and which this Office would prove if the case went to trial, are as follows:

<u>Count Three (Production of Child Pornography with Intent to Transport to the United States, 18 U.S.C. §2251(c)(1) and (c)(2)(A),</u>

a.      The Defendant employed, used, persuaded, induced, enticed, or coerced any minor to engage in, or had a minor assist any other person to engage in, any sexually explicit conduct outside of the United States;

1

b.      The Defendant employed, used, persuaded, induced, enticed, or coerced any minor to engage in such sexually explicit conduct for the purpose of producing any visual depiction of such conduct; and

c.      The Defendant intended that such visual depiction be transported to the United States.

Count Five (Sex Tourism, 18 U.S.C. § 2423(c)):

a.      The Defendant is a United States citizen or alien admitted for permanent residence;

b.      The Defendant traveled in foreign commerce; and

c.      The Defendant engaged in illicit sexual conduct with another person, as defined in 18 U.SC. § 2423(1).

## Penalties

3.      The maximum sentence provided by statute for the offenses to which the Defendant is pleading guilty is as follows:

a.      Count Three:  Not less than fifteen (15) years and not more than thirty (30) years' imprisonment, followed by a term of supervised release of not more than life and a fine of $250,000; and

b.      Count Five:   Not more than thirty (30) years' imprisonment, followed by a term of supervised release of not more than life and a fine of $250,000.

4.      In addition, the Defendant must pay $200 as a special assessment pursuant to 18 U.S.C. § 3013, and must pay a $5,000 special assessment pursuant to 18 U.S.C. § 3014, both of which will be due and should be paid at or before the time of sentencing. This Court may also order him to make restitution pursuant to 18 U.S.C. §§ 3663 and 3664. If a fine or restitution is imposed, it shall be payable immediately, unless, pursuant to 18 U.S.C. § 3572(d), the Court orders otherwise. The Defendant understands that if he serves a term of imprisonment, is released on supervised release, and then violates the conditions of his supervised release, his supervised release could be revoked - even on the last day of the term - and the Defendant could be returned to custody to serve another period of incarceration and a new term of supervised release. The Defendant understands that the Bureau of Prisons has sole discretion in designating the institution at which the Defendant will serve any term of imprisonment imposed.

## Waiver of Rights

5.      The Defendant understands that by entering into this agreement, he surrenders certain rights as outlined below:

a.     If the Defendant had persisted in a plea of not guilty, he would have had the right to a speedy jury trial with the close assistance of competent counsel. That trial could be conducted by a judge, without a jury, if the Defendant, this Office, and the Court all agreed.

b.     If the Defendant elected a jury trial, the jury would be composed of twelve individuals selected from the community. Counsel and the Defendant would have the opportunity to challenge prospective jurors who demonstrated bias or who were otherwise unqualified, and would have the opportunity to strike a certain number of jurors peremptorily. All twelve jurors would have to agree unanimously before the Defendant could be found guilty of any count. The jury would be instructed that the Defendant was presumed to be innocent, and that presumption could be overcome only by proof beyond a reasonable doubt.

c.     If the Defendant went to trial, the government would have the burden of proving the Defendant guilty beyond a reasonable doubt. The Defendant would have the right to confront and cross-examine the government's witnesses. The Defendant would not have to present any defense witnesses or evidence whatsoever. If the Defendant wanted to call witnesses in his defense, however, he would have the subpoena power of the Court to compel the witnesses to attend.

d.     The Defendant would have the right to testify in his own defense if he so chose, and he would have the right to refuse to testify. If he chose not to testify, the Court could instruct the jury that they could not draw any adverse inference from his decision not to testify.

e.     If the Defendant were found guilty after a trial, he would have the right to appeal the verdict and the Court's pretrial and trial decisions on the admissibility of evidence to see if any errors were committed which would require a new trial or dismissal of the charges against him. By pleading guilty, the Defendant knowingly gives up the right to appeal the verdict and the Court's decisions.

f.     By pleading guilty, the Defendant will be giving up all of these rights, except the right, under the limited circumstances set forth in the "Waiver of Appeal" paragraph below, to appeal the sentence. By pleading guilty, the Defendant understands that he may have to answer the Court's questions both about the rights he is giving up and about the facts of his case. Any statements the Defendant makes during such a hearing would not be admissible against him during a trial except in a criminal proceeding for perjury or false statement.

g.     If the Court accepts the Defendant's plea of guilty, there will be no further trial or proceeding of any kind, and the Court will find him guilty.

h.     By pleading guilty, the Defendant will also be giving up certain valuable civil rights and may be subject to deportation or other loss of immigration status. The Defendant recognizes that if he is not a citizen of the United States, pleading guilty may have consequences with respect to his immigration status. Under federal law, conviction for a broad range of crimes can lead to adverse immigration consequences, including automatic removal from the United States. Removal and other immigration consequences are the subject of a separate proceeding, however, and the Defendant understands that no one, including his attorney or the Court, can

predict with certainty the effect of a conviction on immigration status. Defendant nevertheless affirms that he wants to plead guilty regardless of any potential immigration consequences.

## Advisory Sentencing Guidelines Apply

6.      The Defendant understands that the Court will determine a sentencing guidelines range for this case (henceforth the "advisory guidelines range") pursuant to the Sentencing Reform Act of 1984 at 18 U.S.C. §§ 3551-3742 (excepting 18 U.S.C. §§ 3553(b)(1) and 3742(e)) and 28 U.S.C. §§ 991 through 998. The Defendant further understands that the Court will impose a sentence pursuant to the Sentencing Reform Act, as excised, and must take into account the advisory guidelines range in establishing a reasonable sentence.

## Factual and Advisory Guidelines Stipulation

7.      This Office and the Defendant understand, agree and stipulate to the Statement of Facts set forth in Attachment A hereto which this Office would prove beyond a reasonable doubt, and to the following applicable sentencing guidelines factors:

Count Three (Production of Child Pornography with Intent to Transport to the U.S. – Jane Doe 1) (Groups 1 & 2):

a.      Because the defendant produced images of child pornography of Jane Doe 1 on at least two occasions, there are two groups for production of child pornography with intent to transport into the U.S. relating to Jane Doe 1.

b.      Pursuant to U.S.S.G. § 2G2.1(a), the base offense level for production of child pornography is 32.

c.      Pursuant to U.S.S.G. § 2G2.1(b)(1)(B), there is a two (2) level increase because the victim in this case had not attained the age of sixteen years at the time of the offense. (Subtotal: 34).

Count Five (Sex Tourism – Jane Doe 1) (Group 3):

d.      Pursuant to U.S.S.G. § 2G1.3(C)(1) (Cross References), because the offense involved causing a minor to engage in sexually explicit conduct for the purpose of producing a visual depiction of such conduct, the base offense level is 32 pursuant to U.S.S.G. § 2G2.1(a).

e.      Pursuant to U.S.S.G. § 2G2.1(b)(1)(B), there is a two (2) level increase because the victim in this case had not attained the age of sixteen years at the time of the offense. (Subtotal: 34).

Relevant Conduct: (Production of Child Pornography Transported into the U.S. – Jane Doe 2) (Group 4):

f.      Pursuant to U.S.S.G. § 2G2.1(a), the base offense level for production of child pornography is 32.

<u>Relevant Conduct: Transportation of Child Pornography (Group 5):</u>

g.      Pursuant to U.S.S.G. § 2G2.2(a)(2), the base offense level for transportation of child pornography is a level 22.

h.      Pursuant to U.S.S.G. § 2G2.2(b)(2), 2 levels are added because the material involved prepubescent minors. (Subtotal: 24).

i.      Pursuant to U.S.S.G. § 2G2.2(b)(5), 5 levels are added because the Defendant engaged in a pattern of activity involving the sexual abuse or exploitation of a minor. (Subtotal: 29).

j.      Pursuant to U.S.S.G. § 2G2.2(b)(6), 2 levels are added because the Defendant used a computer or an interactive computer service for the possession, transmission, receipt, or distribution of the material. (Subtotal: 31).

k.      Pursuant to U.S.S.G. § 2G2.2(b)(7)(C), 5 levels are added because the offense involved more than 600 images. (Total: 36).

<u>Grouping:</u>

l.      Pursuant to U.S.S.G. § 3D1.4(a), the group with the highest offense level (36) counts as one unit.

m.      There are 5 groups within 4 levels of 36, therefore 4 levels are added to 36 for an adjusted offense level of 40.

n.      This Office does not oppose a two-level reduction in the Defendant's adjusted offense level, based upon the Defendant's apparent prompt recognition and affirmative acceptance of personal responsibility for his criminal conduct. This Office agrees to make a motion pursuant to U.S.S.G. § 3E1.1(b) for an additional 1-level decrease in recognition of your client's acceptance of personal responsibility for his conduct. This Office may oppose any adjustment for acceptance of responsibility if the Defendant (a) fails to admit each and every item in the factual stipulation; (b) denies involvement in the offense; (c) gives conflicting statements about his involvement in the offense; (d) is untruthful with the Court, this Office, or the United States Probation Office; (e) obstructs or attempts to obstruct justice prior to sentencing; (f) engages in any criminal conduct between the date of this agreement and the date of sentencing; or (g) attempts to withdraw his plea of guilty. (Subtotal: 37).

<u>Chapter Four Enhancement:</u>

8.      Pursuant to U.S.S.G. § 4B1.5(b) and Application Note 4(B), there is a five (5) level increase because the instant offense of conviction is a covered sex crime and the defendant engaged in a pattern of activity involving prohibited sexual conduct.

Thus, the final anticipated offense level is 42.

9.     The Defendant understands that there is no agreement as to his criminal history or criminal history category, and that his criminal history could alter his offense level if he is a career offender or if the instant offense was a part of a pattern of criminal conduct from which he derived a substantial portion of his income.

10.     This Office and the Defendant agree that, with respect to the calculation of the advisory guidelines range, no other offense characteristics, sentencing guidelines factors, potential departures or adjustments set forth in Chapters 2, 3, 4, or 5 of the United States Sentencing Guidelines will be raised or are in dispute.

11.     The parties reserve the right to bring to the Court's attention at the time of sentencing, and the Court will be entitled to consider, all relevant information concerning the Defendant's background, character and conduct, including the conduct that is the subject of the counts of the Superseding Indictment that this Office has agreed to dismiss at sentencing.

## Rule 11(c)(1)(C) Plea

12.     The parties stipulate and agree pursuant to Fed. R. Crim. P. 11(c)(1)(C) that the following sentence is the appropriate disposition of this case: a sentence of twenty five (25) years of incarceration, $125,000 in restitution payable at the time of sentencing, and lifetime supervised release.  For the purposes of this agreement, incarceration is a sentence to the Bureau of Prisons, and does not include any form of home confinement.  This agreement does not affect the Court's discretion to set any lawful conditions of probation or supervised release.  In the event that the Court rejects this plea agreement, either party may elect to declare the agreement null and void. Should the Defendant so elect, he will be afforded the opportunity to withdraw his plea pursuant to the provisions of Federal Rule of Criminal Procedure 11(d)(2)(A).

## Obligations of the United States Attorney's Office

13.     At the time of sentencing, this Office will move to dismiss any open counts against the Defendant.

## Restitution

14.     For purposes of sentencing, the offense of conviction constitutes a crime of violence pursuant to 18 U.S.C. § 16.  Therefore, under 18 U.S.C. §§ 3663A, 2259, and 3771, any identified victim is entitled to mandatory restitution.   The restitution could include the medical bills, compensation for time missed from work, as well as counseling costs (including travel) for any of the victims related to the incident, if any such costs exist or are reasonably projected.  18 U.S.C. §§2259, 3663A(b)(2) and (4).  The Defendant further agrees that he will fully disclose to the probation officer and to the Court, subject to the penalty of perjury, all information, including but not limited to copies of all relevant bank and financial records.  The Defendant further agrees to take all reasonable steps to retrieve or repatriate any such funds and to make them available for restitution.  If the Defendant does not fulfill this provision, it will be considered a material breach of this plea agreement, and this Office may seek to be relieved of its obligations under this

agreement.  If the Defendant is incarcerated, the Defendant agrees to participate in the Bureau of Prisons Inmate Financial Responsibility Program.

15.     The Defendant agrees to the entry of a Restitution Order of $125,000.00.  The Defendant agrees to pay $125,000, by way of a cashier's check, no later than the date of sentencing. In accordance with 18 U.S.C. § 3663A(a)(3), the defendant agrees that the court can order a portion of the restitution to persons and entities other than the victim of the offense, to include a non-government entity.  Further, pursuant to 18 U.S.C. § 3664(d)(5), the defendant agrees not to oppose bifurcation of the sentencing hearing if the apportionment of the victims' losses is not ascertainable ten days prior to sentencing.  If the defendant does not make full payment by the date of sentencing, it will be considered a material breach of this plea agreement, and this Office may seek to be relieved of its obligations under this agreement.  Specifically, this Office will be free to ask for any lawful sentence.  The Defendant acknowledges that he may not withdraw his guilty plea because this Office is relieved of its obligations under the agreement pursuant to this paragraph.

## Collection of Financial Obligations

16.     The Defendant expressly authorizes the U.S. Attorney's Office to obtain a credit report in order to evaluate the Defendant's ability to satisfy any financial obligation imposed by the Court.

17.     In order to facilitate the collection of financial obligations to be imposed in connection with this prosecution, the Defendant agrees to disclose fully all assets in which the Defendant has any interest or over which the Defendant exercises control, directly or indirectly, including those held by a spouse, nominee or other third party.

18.     The Defendant will promptly submit a completed financial statement to the United States Attorney's Office, in a form this Office prescribes and as it directs.  The Defendant promises that the financial statement and disclosures will be complete, accurate and truthful, and understands that any willful falsehood on the financial statement will be a separate crime and may be punished under 18 U.S.C. § 1001 by an additional five years' incarceration and fine.

## Forfeiture

19.     Your client agrees to forfeit all right, title and interest in the property seized by law enforcement authorities in the investigation, including property seized from his residence on September 7, 2016.  He further agrees to take whatever steps are necessary to pass clear title to the property to the United States or any State authority.  Those items include the following:

a.   LI001   Dell Inspiron Desktop, s/n: 4G9JLS1;
b.   LI002   Dell Inspiron Laptop, model: N7110, s/n: GCDRZP1, black;
c.   LI003   Dell Laptop, s/n: 8LH1Q32, silver (attached to external LI004);
d.   LI004   WD My Passport External HD, s/n: WXL1E92KUJR1, made in Malaysia (plugged into Dell Laptop LI003, mounted as "W");
e.   LI005   Fantom Drive External HD, s/n: SJ0383769;
f.   LI006   Lexar 16GB flash drive;

g.  LI007   Canon EOS Rebel T2i, Serial Numbers 0923402788 and VA0840546, made in Japan, with a 32 GB PNY Professional SDHC card, made in Korea; and

h.  LI008   Samsung Galaxy mini cell phone, IMEI: 990004374935900.

## Waiver of Appeal

20.     In exchange for the concessions made by this Office and the Defendant in this plea agreement, this Office and the Defendant waive their rights to appeal as follows:

a.      The Defendant knowingly waives all right, pursuant to 28 U.S.C. § 1291 or any other statute or constitutional provision, to appeal the Defendant's conviction on any ground whatsoever. This includes a waiver of all right to appeal the Defendant's conviction on the ground that the statute(s) to which the defendant is pleading guilty is unconstitutional, or on the ground that the admitted conduct does not fall within the scope of the statute(s);

b.      The Defendant and this Office knowingly and expressly waive all rights conferred by 18 U.S.C. § 3742 to appeal whatever sentence is imposed (including any term of imprisonment, fine, term of supervised release, or order of restitution) for any reason (including the establishment of the advisory sentencing guidelines range, the determination of the Defendant's criminal history, the weighing of the sentencing factors, and any constitutional challenges to the calculation and imposition of any term of imprisonment, fine, order of forfeiture, order of restitution, and term or condition of supervised release).

c.      Nothing in this agreement shall be construed to prevent the Defendant or this Office from invoking the provisions of Federal Rule of Criminal Procedure 35(a), or from appealing from any decision thereunder, should a sentence be imposed that resulted from arithmetical, technical, or other clear error.

d.      The Defendant waives any and all rights under the Freedom of Information Act relating to the investigation and prosecution of the above-captioned matter and agrees not to file any request for documents from this Office or any investigating agency.

e.      The Defendant further waives any and all motions, defenses, probable cause determinations, objections which defendant could assert to the superseding indictment or to the Court's entry of judgment against the Defendant, and any imposition of sentence upon the Defendant consistent with this agreement.

## Obstruction or Other Violations of Law

21.     The Defendant agrees that he will not commit any offense in violation of federal, state or local law between the date of this agreement and his sentencing in this case. In the event that the Defendant (i) engages in conduct after the date of this agreement which would justify a finding of obstruction of justice under U.S.S.G. § 3C1.1, or (ii) fails to accept personal responsibility for his conduct by failing to acknowledge his guilt to the probation officer who prepares the Presentence Report, (iii) files a motion to withdraw his guilty plea, or (iv) commits any offense in violation of federal, state or local law, then this Office will be relieved of its

obligations to the Defendant as reflected in this agreement. Specifically, this Office will be free to argue sentencing guidelines factors other than those stipulated in this agreement, and it will also be free to make sentencing recommendations other than those set out in this agreement. As with any alleged breach of this agreement, this Office will bear the burden of convincing the Court of the Defendant's obstructive or unlawful behavior and/or failure to acknowledge personal responsibility by a preponderance of the evidence. The Defendant acknowledges that he may not withdraw his guilty plea because this Office is relieved of its obligations under the agreement pursuant to this paragraph.

## Entire Agreement

22.     This letter supersedes any prior understandings, promises, or conditions between this Office and the Defendant and, together with the Sealed Supplement, constitutes the complete plea agreement in this case. The Defendant acknowledges that there are no other agreements, promises, undertakings or understandings between the Defendant and this Office other than those set forth in this letter and the Sealed Supplement and none will be entered into unless in writing and signed by all parties.

If the Defendant fully accepts each and every term and condition of this agreement, please sign and have the Defendant sign the original and return it to me promptly.

Very truly yours,

Robert K. Hur
United States Attorney

By: _____
Paul E. Budlow
Assistant United States Attorney
Kaylynn N. Shoop
Trial Attorney, Criminal Division

I have read this agreement, including the Sealed Supplement, and carefully reviewed every part of it with my attorneys. I understand it, and I voluntarily agree to it. Specifically, I have reviewed the Factual and Advisory Guidelines Stipulation with my attorneys, and I do not wish to change any part of it. I am completely satisfied with the representation of my attorneys.

7/10/18
Date

_Martin R. Hall_
Martin Robert Hall


I am Mr. Hall's attorney. I have carefully reviewed every part of this agreement, including the Sealed Supplement, with him. He advises us that he understands and accepts its terms. To my knowledge, his decision to enter into this agreement is an informed and voluntary one.

July 10, 2018
Date

_Marc Johnson_
Marc Johnson, Esq.

10

## Attachment A

*The undersigned parties hereby stipulate and agree that the following facts are true and accurate, and that if this matter had gone to trial, the government would have proven the following facts beyond a reasonable doubt. The undersigned parties also stipulate and agree that the following facts do not encompass all of the evidence that would have been presented had this matter gone to trial.*

Martin Robert Hall ("Hall"), age 56, was a resident of Reisterstown, Maryland. As detailed below, Hall travelled to the Philippines ~~and other countries in Southeast Asia~~ for the purpose of engaging in illicit sexual activity with minor females. Hall's conduct included paying the minors and their families, engaging in sex acts with minors, producing images ~~and videos~~ of the minors engaging in sexually explicit conduct, and transporting the images and videos back to Maryland. Additionally, Hall used sophisticated computer programs to download and store thousands of images and videos of child pornography.

Hall is owner of Coreservelets.com, a consulting firm that specialized in teaching computer programming and software development and in Java programming. From the late 1990's until his arrest in September 2016, Hall traveled to teach Java and other computer programming throughout the United States and various parts of the world including Canada, Norway, Mexico, Cambodia, Philippines, the Netherlands, Japan, Australia, and India.

Using various online accounts and programs, Hall communicated with dozens of young females in in the Philippines. The communications were predominately about sex. The females were typically teenagers and Hall often asked the young girls about meeting in person during his planned visits to the Philippines. Hall also frequently inquired about having sex with their younger siblings, and some of the females responded that their siblings were too young. Hall sent money via Western Union to many of the girls in the Philippines. Between 2008 and 2016, Hall sent more than $15,000.00 to females in the Philippines using Western Union.

Jane Doe 3:

In approximately 2006, Hall met Jane Doe 3, then age 16 (born in 1991), while he was traveling in the Philippines. Hall and Jane Doe 3 had intercourse and engaged in other sex acts. Hall paid Jane Doe 3 regularly – 6 to 12 times per year, including when he was in the United States. From approximately 2006 through 2016, Hall paid Jane Doe 3, took her family on vacations when he visited her in the Philippines, and engaged in sex acts with Jane Doe 3. When Hall would arrive in the Philippines, Jane Doe 3 would notify her entire extended family who would join her and Hall in multiple hotel rooms for the entire length of Hall's stay in the Philippines. Hall took the family to other resorts and amusement parks. Hall met other members of Jane Doe 3's family, including her sister Jane Doe 2 (born in May 2000) and her niece, Jane Doe 1 (born in December 2002).

1

Jane Doe 2:

Hall had contact with Jane Doe 2 beginning when she was at least 12 years old, which included Hall touching Jane Doe 2's breasts, under her clothing. Hall also took nude photos of Jane Doe 2, including a series of photos of Jane Doe 2, Jane Doe 1, and two other nude females, while showering and while drying off after the shower. The series also included an image of Jane Doe 2 and Jane Doe 1 laying in a bed, nude, with their genitals exposed. Both Jane Doe 2 and Jane Doe 1 were minors at the time of the production, which occurred no later than 2013. Hall provided Jane Doe 2 with money when they were together, approximately 2,000 Philippine pesos per payment.

Jane Doe 1 (Count 3 and Count 5):

Hall met Jane Doe 1 when she was 12 years old. He began taking nude photographs of Jane Doe 1, typically when she was coming out of the shower. Hall would often buy gifts for Jane Doe 1 and her family during his visits, including taking the family on shopping trips to the mall. Hall engaged in sex acts with Jane Doe 1 starting when she was 14 years old, including oral sex and vaginal intercourse. The abuse occurred in 2015 and in 2016. Hall visited Jane Doe 1 and her family in the Philippines during the course of at least 4 months, from April 2016 through August 2016. As detailed below, in April 2016, Hall produced videos and images that he later titled, "[Jane Doe 1] atrium sex". In July 2016, using his Canon EOS Rebel T2i digital camera, Hall produced a series of approximately 12 image files, which depict Jane Doe 1, partially naked, and at least three of which are focused on Jane Doe's exposed genitals. Jane Doe 1 last saw Hall, during the summer of 2016 when she was 15 years old. As mentioned above, no later than 2013, Hall produced nude images depicting Jane Doe 1's genitals, as part of a series of images that included Jane Doe 2.

Relevant Conduct (Transportation, Receipt and Possession of Child Pornography):

Hall transported the child pornography that he produced of Jane Doe 1 and Jane Doe 2 from the Philippines to Maryland.

Hall collected and downloaded child pornography using Freenet, a free, Java-based peer to peer file sharing program. Freenet stores a users' files by breaking the files into numerous encrypted pieces and depositing the pieces on other users' computers. The complete file can be reassembled and downloaded by anyone in the network who has the key or password for the file. Because the pieces of the files are encrypted, the individual Freenet users are unaware of the content of the files they have agreed to store on their hard drives. Because of these properties, Freenet has become popular for storing and sharing child pornography. For much of these materials, the passwords or keys are made publicly available via Freenet-based websites called "Freesites" and on numerous Freenet message boards dedicated to child exploitation. Hall was a regular user of Freenet to collect and store child pornography.

Hall also kept thousands of files of child pornography on his computers and hard drives in his residence. Hall used encryption software on all of his digital devices to prevent others from accessing his files.

After observing Hall request child pornography using Freenet, investigators from the Baltimore County Police Department searched Hall's residence in Reisterstown, Maryland on September 7, 2016, pursuant to a search warrant. Investigators seized Hall's computer equipment and digital camera, further described as:

a. LI001    Dell Inspiron Desktop, s/n: 4G9JLS1;
b. LI002    Dell Inspiron Laptop, model: N7110, s/n: GCDRZP1, black;
c. LI003    Dell Laptop, s/n: 8LH1Q32, silver (attached to external LI004);
d. LI004    WD My Passport External HD, s/n: WXL1E92KUJR1, made in Malaysia (plugged into Dell Laptop LI003, mounted as "W");
e. LI005    Fantom Drive External HD, s/n: SJ0383769;
f. LI006    Lexar 16GB flash drive;
g. LI007    Canon EOS Rebel T2i, Serial Numbers 0923402788 and VA0840546, made in Japan, with a 32 GB PNY Professional SDHC card, made in Korea; and
h. LI008    Samsung Galaxy mini cell phone, IMEI: 990004374935900.

At the time of the execution of the warrant, Hall's Dell laptop (LI003) and (LI004) WD My Passport external hard drive were turned on and in an unencrypted state. During an on-scene forensic examination of Dell laptop and connected external hard drive, investigators discovered approximately 8000 images relating to child exploitation. The device became encrypted during the forensic examination, but not before investigators had copied more than 4,600 image files, most of which are child pornography. The images included known series depicting prepubescent females engaged in sex acts with adults. Many of the victims in the images appeared to be from Southeast Asia. Included in those images was the series of sexually explicit images of Jane Doe, 1, described above.

Before the device became encrypted, a listing of the file structure and file names on the device was also copied. This file listing reflects that Hall saved and organized the thousands of photographs and videos from his various trips to the Philippines. The organization is based on the date, location, and often the name of the subject. For example, there are numerous files that are still encrypted, in the following file paths:

| Folder Path & File Name | Created Date |
| --- | --- |
| :\travel\gfps\sta ines\2016-04-and-07\sexy\[**Jane Doe 1**] atrium sex 1 001.mov | 7/25/16 |
| :\travel\gfps\sta ines\2016-04-and-07\sexy\[**Jane Doe 1**] atrium sex 1 003.jpg | 7/25/16 |
| :\travel\gfps\sta ines\2016-04-and-07\sexy\[**Jane Doe 1**] atrium sex 1 004.jpg | 7/25/16 |
| :\travel\gfps\sta ines\2016-04-and-07\sexy\[**Jane Doe 1**] atrium sex 1 005.jpg | 7/25/16 |
| :\travel\gfps\sta ines\2016-04-and-07\sexy\[**Jane Doe 1**] sleeping (2).jpg | 7/26/16 |
| :\travel\gfps\sta ines\2016-04-and-07\sexy\[**Jane Doe 1**] sleeping (1).jpg | 7/26/16 |
| :\travel\gfps\sta ines\2016-04-and-07\sexy\[**Jane Doe 1**] making out grotto 001.mov | 7/28/16 |
| :\travel\gfps\sta ines\2016-04-and-07\sexy\[**Jane Doe 1**] skirt 002.jpg | 8/6/16 |

3

The above files have not been accessed by the government and the contents remain unknown.

During the execution of the search warrant, Hall denied any involvement with child pornography, and denied having sex with minors in the Philippines. Hall denied taking the photographs of Jane Doe 1. Hall also refused to provide the password to any of his encrypted devices. Investigators have not been able to retrieve additional files from any of Hall's devices.

The computers, digital storage devices, and the camera seized from Hall's residence were manufactured outside the state of Maryland. Prior to Hall's possession of the files, the visual depictions of child pornography found in his possession were transported in or affecting interstate or foreign commerce, and was produced using materials that had been transported in or affecting interstate or foreign commerce.

I have reviewed the foregoing statement of facts with my attorney, understand it, agree with it, and do not wish to change any part of it. I further understand that it is included as part of my plea agreement with the government in this case.

_Martin R. Hall_
Martin Robert Hall

I am Mr. Hall's attorney. I have carefully reviewed the statement of facts with him.

_Marc Johnson_
Marc Johnson, Esq.
Counsel for Martin Robert Hall